Andrew Perrong
Counsel for Plaintiff
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Telephone: (215) 225-5529

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| Jonathan Bahr, individually and on behalf of a class of all persons and entities similarly situated, | Case No. |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| SelectQuote Insurance Services Inc. | |
| and | |
| TouchStone Communications – II, L.L.C. | |
| Defendants. | |

### Preliminary Statement

1.     Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve

a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     Plaintiff Jonathan Bahr brings this action against Defendants under the TCPA, for contacting the Plaintiff and other individuals, who, like the Plaintiff, were listed on the National Do Not Call Registry.

4.     A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### **Parties**

5.     Plaintiff Jonathan Bahr is an individual residing in Arizona.

6.     Defendant SelectQuote Insurance Services Inc. is for-profit company that sells insurance that is located in Kansas.

7.     Defendant TouchStone Communications – II, L.L.C. is a Texas corporation which does business in Arizona and directed its illegal calling conduct into Arizona by sending calls and using Arizona area codes.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA Background**

10. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

11. Relevantly, the TCPA provides private rights of action for three types of telemarketing-related conduct.

12. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods

4

and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

14.    Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

15.    This regulation is presently codified at 47 CFR 64.1200(c)(1-2).

16.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

<u>The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.</u>

17.    The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

18.    The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

19.    A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Factual Allegations**

20.     Plaintiff Bahr is a "person" as defined by 47 U.S.C. § 153(39).

21.     Plaintiff's telephone number, 480-XXX-XXXX, is on the National Do Not Call Registry and has been registered continuously since November 15, 2024.

22.     The Plaintiff's telephone number is used for residential purposes and is not associated with a business.

23.     The Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

24.     The Plaintiff uses the telephone number for personal, family, and household purposes.

25.     Mr. Bahr nonetheless received at least five telemarketing calls from Defendant TouchStone placed on behalf of SelectQuote, at SelectQuote's direction to sell insurance on February 14, 26, March 12, 23, and April 8, 2025 from the "spoofed" caller IDs 480-496-9207, 480-496-0951, 480-496-4340, 480-496-9239 and 480-496-6463, respectively.

26.     The calls were made for the purpose of offering Medicare supplemental health insurance.

27.     The Plaintiff rejected the first call because he did not recognize the number, which was "spoofed."

28.     The plaintiff answered the call on March 23 and indicated that he was not interested in the insurance services being offered.

6

29.    Finally, during the last call on April 8, Defendant SelectQuote finally identified itself after having received the transfer from Defendant TouchStone.

30.    The calls all bore similar scripting and came from the same spoofed NPA-NXX combination, indicating they came from the same place.

31.    Indeed, none of the telephone numbers appear to be in service with the underlying carrier, Quest, and were instead "spoofed."

32.    On the April 8 call, the Plaintiff spoke to an employee "Shawn Bowen", who identified his company as SelectQuote.com.

33.    Mr. Bowen provided a call back number of (833) 559-0391.

34.    That's a telephone number for SelectQuote.

35.    The calls all came from the following spoofed numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Available? | CNAM Result | Carrier (Spoofed) |
|---|---|---|---|
| 4804969207 | Y | PHOENIX,AZ | QWEST |
| 4804960951 | Y | PHOENIX,AZ | QWEST |
| 4804964340 | Y | PHOENIX,AZ | QWEST |
| 4804969239 | Y | PHOENIX,AZ | QWEST |
| 4804966463 | Y | PHOENIX,AZ | QWEST |

36.    As the aforementioned chart shows, the CNAM transmitted by the ultimate telephone carriers provided CNAM functionality, but provided inaccurate CNAM

functionality, since Defendants utilized "spoofing" to make the calls appear to come from out of service names and numbers, instead of the Defendants' names and numbers.

37.     Indeed, the Defendants appear to have spoofed each and every of the numbers, as will be revealed through discovery, to further hide their identity.

38.     With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours, because they are spoofed to unassigned phone numbers. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours with the Defendants.

39.     Mr. Bowen, and all the previous callers, offered the Plaintiff Medicare benefits that he did not want or need.

40.     SelectQuote relies on telemarketing to generate new customers through vendors it uses, like TouchStone.

41.     Indeed, SelectQuote has previously been sued in lawsuits alleging violations of the TCPA.

42.     The Plaintiff did not consent to telemarketing calls from the Defendants.

43.     The Plaintiff never did business with the Defendants.

44.     The calls were not necessitated by an emergency.

45.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

46.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

47.    The FCC has instructed that sellers such as SelectQuote may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such TouchStone:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

48.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

49.     SelectQuote is liable for Defendant TouchStone's conduct and telemarketing calls placed by TouchStone and transferred to SelectQuote and its agents to generate customers for SelectQuote and its agents, including the Plaintiff.

50.     Moreover, with full knowledge that TouchStone was violating multiple parts of its agreement SelectQuote, together with applicable addenda, including, but not limited to, failing to comply with the TCPA do not call registry and consent provisions included therein, and calling individuals with highly-illegal spoofed caller IDs, SelectQuote did nothing.

51.     SelectQuote thus had full knowledge of TouchStone's illegal conduct, and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior, including, upon information and belief, not even terminating TouchStone and continuing to work with TouchStone during the pendency of this lawsuit.

52.     The aforementioned facts also demonstrate that SelectQuote failed to supervise TouchStone or enforce their compliance with applicable laws and regulations.

53.     SelectQuote was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones.

54.     To do so, SelectQuote hired TouchStone to orchestrate an *en masse* telemarketing campaign that explicitly called for TouchStone to contact customers by telephone.

10

55.     Upon information and belief, SelectQuote's relationship with Defendant TouchStone would have been memorialized in a lead generation agreement, with multiple addenda containing hallmarks of agency.

56.     That agreement would have dictated applicable criteria for leads SelectQuote would accept.

57.     As such, SelectQuote controlled the content of TouchStone's telemarketing.

58.     Finally, SelectQuote could have terminated TouchStone.

59.     It did not.

60.     By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, SelectQuote directed TouchStone and the content, method, and criteria of the communications that TouchStone would use in their calling.

61.     A reasonable seller like SelectQuote whose agents are making calls would investigate into the reasons why their agents and telemarketers would be calling telephone numbers on the do not call registry without consent, let alone why TouchStone would continue to call people after they asked the calls to stop.

62.     It did not.

63.     SelectQuote hired TouchStone without a proper investigation and did not terminate them when they were informed of TouchStone's illegal calling conduct.

64.     As such, they knowingly ratified TouchStone's conduct.

65.     SelectQuote also ratified TouchStone's conduct because, with knowledge that the call was an illegal call that was made to a number on the Do Not Call Registry, to a customer that had already expressed a desire for the calls to stop, and using highly-illegal "spoofed" caller IDs, they accepted the Plaintiff's lead and tried to sell the Plaintiff SelectQuote's insurance services.

66.     SelectQuote accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

67.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

68.     The Plaintiff never asked for these calls.

69.     The Plaintiff never did any business with the Defendants.

70.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

71.     Plaintiff never provided his consent or requested the calls.

72.     The calls were all unwanted, nonconsensual encounters.

73.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed

and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## Class Action Statement

74.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

75.     Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

76.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**TouchStone National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from TouchStone or a third party acting on TouchStone's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**SelectQuote National Do Not Call Registry SubClass:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from TouchStone or a third party acting on TouchStone's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint; (5) that advertised, or were intended to advertise, SelectQuote's goods and services.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a

13

valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request to Defendants during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

77.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

78.     Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

79.     Members of the Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

80.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

81.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

82.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

83.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

84.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.      Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.   Whether Defendants made calls to numbers on the Internal Do Not Call Registry Class;

c.   Whether Defendants transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID class, and whether such numbers could have been called during regular business hours to lodge a do not call request;

d.      Whether Defendants' conduct constitutes a violation of the TCPA;

e.      Whether Defendants are vicariously liable for any calls placed by telemarketing vendors, if any; and

f.      Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

85.      Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

86.      Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

87.      The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

88.      Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

89.      Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the
National Do Not Call Registry Class)**

90.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

91.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

92.    Defendants' violations were negligent, willful, or knowing.

93.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

94.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)
### (On behalf of Plaintiff and the Telemarketing Caller ID Class)

95.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

96.    It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

97.    It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

98.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without proving a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

99.    These violations were willful or knowing.

100.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID

are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

101.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

102.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

103.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

104.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

105.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.    Injunctive relief requiring Defendants to transmit compliant caller ID in the future;

C.    Injunctive relief requiring Defendants to honor internal Do Not Call requests in the future;

D.    That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

E.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.    Such other relief as the Court deems just and proper.

**JURY DEMAND**

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated:  December 22, 2025

Respectfully Submitted,

*/s/ Andrew Perrong*
Andrew Perrong
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Telephone: (215) 225-5529
*Subject to Pro Hac Vice*